UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Sandra Sanders,

                Plaintiff,      Case No. 13-cv-12090
                                    Hon. Judith E. Levy
v.                                    Mag. Judge Paul J. Konives

Judson Center, Inc.,

                Defendant.

_____/

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [15]**

This is an employment discrimination case. Pending is defendant Judson Center, Inc.'s motion for summary judgment under Fed. R. Civ. P. 56. (Dkt. 15.)

    I.      Background

Defendant is a nonprofit human service agency providing services to disabled individuals identified as "consumers". Plaintiff was employed as a Job Coach beginning in May 2008. Her duties included monitoring, assisting, and training consumers in job tasks, tending to

and monitoring consumers at all times, and assisting with the transport of consumers as needed.

A. Plaintiff's Alleged Disability

On December 1, 2009, plaintiff had a heart attack, and was hospitalized through December 4, 2009. Plaintiff was in the hospital twice more for heart-related conditions in January and March of 2010. As a result of her heart condition, plaintiff was prescribed several medications. In late 2009, plaintiff was prescribed Lisinopril, an ace inhibitor used to rid the body of fluid, and in October 2011, plaintiff was prescribed hydrochlorothiazide, which is used to treat high blood pressure. This medication causes the kidneys to eliminate unneeded water and salt from the body through urination.

Plaintiff alleges she is disabled based on this medical history, and that her disability is a mix of her heart condition and the side effects of the medications she is required to take that cause her to urinate on a frequent and sometimes urgent basis.

B. Plaintiff's Job Duties

On May 28, 2008, plaintiff acknowledged her Job Coach Responsibilities, which stated in relevant part that "[y]ou are to remain

2

with your consumer for the entire work shift" and "[i]f you must leave the consumer for any reason, you must make sure that the consumer is supervised by someone who knows the consumer and does not have other consumers that may take their attention from your one-on-one assignment." (Dkt. 15-5, at 2.)

On May 23, 2012, following an incident where another Judson Center employee left a consumer at a job site, defendant instituted new, stricter standards setting forth the level of supervision each consumer required. Plaintiff attended the meeting where these standards were announced. There, she acknowledged that the consumers at her job site required "line of sight" supervision. During that meeting, plaintiff informed her supervisor that she was on prescription medication that requires her to "go to the bathroom," and her supervisor responded that she was permitted to use the bathroom during her shift. Plaintiff had another conversation concerning her medication with management earlier in 2012; the earlier conversation mirrored the May 23rd conversation. Those are the only times plaintiff discussed this particular topic with her employer, and plaintiff's description of her

3

condition focused on frequent urination and made no mention of her to need to urinate suddenly or without notice.

In response to plaintiff and other employees who asked the same question, defendant explained what employees should do when they need to use the restroom while supervising line-of-sight consumers. Employees were instructed to ask another person at a defendant-affiliated site to watch the consumer temporarily, or the employee was to bring the consumer into the restroom.

C. The May 29, 2012 Incident and Subsequent Termination

On the night of May 29, 2012, plaintiff was transporting two consumers who required line-of-sight supervision home from a job site in a van. Plaintiff states she was overcome with an urgent need to urinate, and stopped the van at a gas station in Southfield, Michigan to use the restroom. While plaintiff used the restroom, one of the consumers exited the van, entered the gas station, and attempted to go grocery shopping. Plaintiff was able to intervene and get the consumer back on the van, and thereafter she drove both consumers to the Judson Center.

On May 31, 2012, plaintiff filed an incident report, which she submitted to her supervisors at the Judson Center. In that report, she stated that she urgently needed to use the restroom and that one of the consumers got off of the van while she was in the restroom. She then stated that upon exiting the restroom, she found the consumer carrying merchandise inside the gas station.

Latacha Shelton, an Employment Specialist at the Judson Center, received the report that day. Shelton discussed the report with the second consumer on the van. That consumer stated that plaintiff asked both consumers to stay in the van, and that she had followed directions and remained on the van listening to the van's radio.

Based on plaintiff's report and Shelton's discussion with the other consumer, Dan Robin, Judson's Manager of Supported Employment, completed a Notice of Disciplinary Action later the same day. Robin reviewed the Notice with plaintiff and Shelton, and then terminated plaintiff for violating the line of sight rule.

On June 8, 2012, plaintiff sent defendant a letter contesting her termination. The letter set forth the employer's stance on using the bathroom during the workday, and provided a recitation of the events

5

consistent with plaintiff's May 31st incident report. She then stated that Robin may have been confused about the nature of his instructions to her when she asked about using the restroom on shift, and that plaintiff was actually inquiring about what to do if she needed to relieve herself while transporting consumers.

On June 11, 2012, Sheri Smith, the Human Resources Manager for the Judson Center, discussed the situation with plaintiff, including the contents of her June 8th letter. On July 5, 2012, Smith sent plaintiff a letter reaffirming the results of defendant's investigation, and reaffirming plaintiff's termination. The stated reason for the termination was plaintiff leaving two line-of-sight consumers in a van alone. Defendant reasoned that plaintiff left the keys in the van as well, based on the second consumer's statement that she listened to the radio while plaintiff was inside the gas station.

Plaintiff filed suit on May 10, 2013, alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"), M.C.L. § 37.1101 *et seq.* In her deposition testimony and summary judgment briefing, plaintiff additionally contends that 1) she took the

6

van keys with her when she went into the gas station; 2) she asked the gas station attendant to keep an eye on the consumers while she used the bathroom; and 3) she kept the bathroom door open while she was inside the gas station so she could observe the consumers. Oral argument was held on this motion on July 11, 2014, and this motion is now ready for decision.

II. Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248. The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (citing *Skousen v. Brighton High Sch.,* 305 F.3d 520, 526 (6th Cir.2002)).

III. Analysis

Plaintiff claims that defendant violated both the ADA and the PWDCRA by discriminating against her on the basis of her disability. The PWDCRA "substantially mirrors the ADA, and resolution of a plaintiff's ADA claim will generally, though not always, resolve the plaintiff's PWDCRA claim." *Cotter v. Ajilon Servs., Inc.*, 287 F.3d 593, 597 (6th Cir. 2002).

The first step in assessing both claims is to begin with the general framework for determining whether plaintiff has stated a claim under the ADA. *See Id*. at 598; *Donald v. Sybra, Inc.*, 667 F.3d 757, 764. Plaintiff has provided no direct evidence of intentional discrimination based on disability, so she must first establish a *prima facie* case of discrimination based on circumstantial evidence. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973); *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008). To establish her case, plaintiff must make five showings: "she was disabled; she was otherwise qualified to perform the essential functions of her job; she suffered an adverse employment action; her employer knew or had reason to know of her disability; and either the position

8

remained open or a non-disabled person replaced her." *Gecewicz v. Henry Ford Macomb Hosp. Corp.*, 683 F.3d 316, 321 (6th Cir. 2012).[1]

"Disability" under the ADA is defined as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment[.]" 42 U.S.C. § 12101(1). The inquiry into whether a person is disabled under the ADA is thus a two-part inquiry: first, whether an impairment exists; second, if the impairment exists, whether it substantially limits one or more major life activities.

A physical impairment consists of "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular,

---

[1] There has been "confusion in this circuit concerning the proper test for establishing a *prima facie* case of employment discrimination under the ADA." *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011). Some courts have applied a three-step test requiring only 1) a showing of a disability; 2) a showing that the plaintiff was otherwise qualified to perform a job's requirements with or without an accommodation; and 3) discharge solely by reason of the disability. *Id*. The Sixth Circuit has clarified that the five-step test above is the proper one where a plaintiff does not have direct evidence of disability discrimination. *Id*.

reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine[.]" 29 C.F.R. § 1630.2(h)(1).

Plaintiff contends that her impairment consists of her heart condition, and is evidenced by her multiple hospitalizations for heart attacks and related cardiovascular events. Plaintiff further argues that the heart condition requires her to take medication which causes her to experience sudden or urgent urination. For the purposes of her employment discrimination claim, plaintiff claims that the relevant impairment is the heart condition itself, and she implies that she is substantially limited in the major life activity of urination caused by medication. In the alternative, plaintiff appears to argue that frequent urination caused by medication is her impairment.

Courts have addressed the question of whether the effects of a treatment for a condition may constitute an impairment, even if the underlying condition is not itself an impairment. *See Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 186-87 (3rd Cir. 2010) (citing *Christian v. St. Anthony Med. Ctr., Inc.*, 117 F.3d 1051, 1052 (7th Cir. 1997)); *see also Hill v. Kan. City Area Transp. Auth.,* 181 F.3d 891, 894 (8th Cir.1999); *Gordon v. E.L. Hamm & Assocs.,* 100 F.3d 907, 912 (11th

10

Cir.1996). The plaintiff must show that "(1) the treatment is required in the prudent judgment of the medical profession, (2) the treatment is not just an attractive option, and (3) that the treatment is not required solely in anticipation of an impairment resulting from the plaintiff's voluntary choices." *Sulima*, 602 F.3d at 186 (citing *Christian*, 117 F.3d at 1052) (internal quote marks omitted). The Court adopts this standard in assessing plaintiff's claims.

The record shows that plaintiff's medication is required by her doctor in order to treat her underlying heart condition. There is no indication that plaintiff has chosen this medication as an attractive option in alternative to some other treatment that would not result in urination issues. Likewise, there is no indication that plaintiff's treatment is required solely in anticipation of an impairment resulting from her voluntary choices; it is instead required to treat a condition already in existence. Taking the facts alleged in the light most favorable to plaintiff as the non-moving party, plaintiff has raised a genuine issue of material fact regarding whether she has a physical impairment consisting of her sudden need to urinate, caused by her medication, as required by the ADA.

Next, plaintiff must show that due to the impairment, she is substantially limited in a major life activity. Plaintiff argues that she is limited in "walking, standing, and such activities," and offers as evidence a September 2011 return to work letter from her treating physician. (Dkt. 16-7, at 2.) At oral argument, plaintiff also argued that she was impaired in the major life activity of thinking. Walking, standing, and thinking are undeniably major life activities under the ADA. *See* 29 C.F.R. § 1630.2 (i)(1)(i). The Court must determine whether plaintiff has raised a material question of fact related to whether she is substantially limited in these major life activities "as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(ii).

"[T]he plaintiff's evidence that his or her impairment is substantially limiting must derive from his or her own experience." *McPherson v. Fed. Express Corp.*, 241 F. App'x 277, 282 (6th Cir. 2007) (citing *Toyota Motor Mfg., Kentucky, Inc., v. Williams,* 534 U.S. 184, 198 (2002)). Deposition testimony from the plaintiff or a medical professional as to the limitations is sufficient to survive summary judgment. *See Roush v. Weastec, Inc.*, 96 F.3d 840, 844 (6th Cir. 1996)

(holding that there was a genuine issue of material fact as to substantial limitation where plaintiff and plaintiff's doctor described such limitations at depositions).

Here, the only evidence plaintiff provides of any substantial limitation on the major life activities of walking and standing is a return to work letter, dated September 6, 2011, which restricts plaintiff from working more than nine hours per day. The letter says nothing concerning any limitation on plaintiff's ability to walk or stand at that time. Plaintiff does not explain why she was at the clinic that day, or the health issue for which she sought treatment. The three-sentence letter does not tie the work-hour limitation to any impairment alleged in her complaint. Moreover, plaintiff did not begin taking hydrochlorothiazide, the medication that caused the need for urination, until October 2011, a month after the note was written. Whatever limitation plaintiff wishes the Court to infer from the note could not have applied to any side effect of that drug.[2]

---

[2] Plaintiff provides an FMLA form dated April 21, 2011, which states that plaintiff was "unable to stand or walk for prolonged periods." (Dkt. 16-6, at 13.)  However, those limitations are related to "severe uncontrolled knee pain," (Id.), and the form does not indicate that the knee pain has any connection to plaintiff's heart or medication issues.

13

The only evidence plaintiff provides of a substantial limitation on the major life activity of thinking is her deposition testimony, in which she states that on the night at issue, "[b]ecause my urge to use the restroom was so extreme, I could not even hardly focus." (Dkt. 16-11 at 9.) This testimony is insufficient to raise a genuine issue of material fact that plaintiff was substantially limited in thinking. Plaintiff's testimony states only that on the night in question, she considered her thinking to be impaired during the time she urgently needed to use the restroom. Plaintiff does not state that this limitation was a regular or even sporadic occurrence, and has therefore failed to raise a genuine issue of material fact as to whether she is substantially limited in this major life activity.

The Court cannot infer from the evidence provided that plaintiff is substantially limited in either of the major life activities alleged. Because plaintiff has demonstrated no substantial limitation in a major life activity, she has failed to make a *prima facie* case that she is disabled within the meaning of the ADA and PWDCRA.[3]

---

[3] If the Court looks at plaintiff's underlying heart condition as the relevant impairment and frequent urination as the alleged substantial limitation on a major life activity, the above analysis still holds.

IV.   Conclusion

For the reasons set forth above, plaintiff has not demonstrated that she is entitled to relief under either the ADA or the PWDCRA, as she has not shown that she is disabled.  Accordingly, it is ordered that:

Defendant Judson Center, Inc.'s motion for summary judgment is GRANTED; and

Plaintiff's complaint is DISMISSED.

IT IS SO ORDERED.

Dated: August 6, 2014                s/Judith E. Levy
    Ann Arbor, Michigan           JUDITH E. LEVY
                                 United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 6, 2014.

                                 s/Felicia M. Moses
                                 FELICIA M. MOSES
                                 Case Manager

---

Plaintiff has not raised a question of material fact as to whether she is substantially limited in the major life activity of urination through her testimony or medical records.